**PUBLIC SCHOOL RETIREMENT SYSTEM OF the SCHOOL DISTRICT OF KANSAS CITY, Missouri, and Cecelia Carter, Appellants,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS and Donna Cavitte, Respondents.**

No. WD 65106.

Missouri Court of Appeals, Western District.

Feb. 14, 2006.

Application for Transfer to Supreme Court Denied March 28, 2006.

Application for Transfer Denied May 2, 2006.

Charles W. Hatfield and Khristine A. Heisinger, Jefferson City, MO, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shannon L. Hamilton, Assistant Attorney General, James R. Layton, State Solitor, Jefferson City, MO, for respondents.

Before EDWIN H. SMITH, C.J., and LOWENSTEIN and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

The Public School Retirement System (PSRS) of the Kansas City School District (KCSD) and PSRS's executive director, Cecelia Carter, appeal the summary judgment of the Circuit Court of Cole County, Missouri, for the respondents, the Missouri Commission on Human Rights (MCHR) and its executive director, Donna Cavitte, on the PSRS and Carter's petition against the MCHR [1] for a writ of mandamus. In their petition, they sought a writ from the circuit court mandating that the MCHR vacate and set aside the right-to-sue letter it had issued, pursuant to § 213.111.1,[2] to an employee of the PSRS, Mary Taylor (Taylor), concerning an age-discrimination complaint she had filed with the MCHR against the PSRS and Carter,[3] pursuant to the Missouri Human Rights Act (MHRA), chapter 213, specifically § 213.075.1; *see also Green v. City of St. Louis,* 870 S.W.2d 794, 796 (Mo. *banc* 1994). The MHRA was enacted by the Missouri General Assembly, *inter alia,* "to eliminate and prevent

---

1. Inasmuch as Cavitte is named as a party in the petition for a writ of mandamus only in her capacity as the executive director of the MCHR, subsequent references to the "MCHR" include Cavitte, unless the context indicates otherwise.

2. All statutory references are to RSMo, 2000, unless otherwise indicated.

3. Inasmuch as Carter was named in Taylor's MCHR complaint only in her capacity as the executive director of the PSRS, subsequent references to the "PSRS," with respect to the complaint, include Carter, unless the context indicates otherwise.

discrimination because of race, color, religion, national origin, ancestry, sex, [and] age as it relates to employment." § 213.030.1(1).

The PSRS raises two points on appeal. In Point I, it claims that the trial court erred in *denying* its motion for summary judgment. In Point II, it claims that the trial court erred in *granting* the MCHR's motion for summary judgment.

We affirm as to the trial court's grant of summary judgment to the MCHR on the PSRS' petition for mandamus and dismiss as to the trial court's denial of summary judgment to the PSRS on its petition.

### Facts

On October 2, 2003, Taylor, who was employed by the PSRS, filed an age-discrimination complaint with both the Equal Employment Opportunity Commission (EEOC), the federal agency charged with investigating employers accused of violating the Civil Rights Act, Title VII, and the MCHR against her employers, who she named in the complaint as the KCSD and the PSRS. Pursuant to a "work-sharing" agreement with the EEOC, as authorized by § 213.075.2, her complaint filed with the EEOC was deemed filed with the MCHR. In her EEOC and MHRA complaints, Taylor, who was 61 years old at the time, alleged that her immediate supervisor, Carter, told her that if she did not resign, she would be fired; and, when she refused to resign, Carter announced to the entire staff that Taylor was retiring. Taylor alleged that because of this stressful situation, she became ill and took sick leave beginning August 29, 2003.

Prior to the filing of her complaint, Taylor had sent a letter, dated September 22, 2003, to Carter and the Board of Directors of the KCSD advising them of Carter's demand that she resign and Taylor's belief that such demand constituted unlawful discrimination based on age. On September 30, 2003, Taylor received a letter from Carter notifying her that she had been terminated, prompting the filing of Taylor's complaint. The PSRS did not receive notice of the filing of Taylor's complaint.

Pursuant to the work-sharing agreement between the EEOC and the MCHR, Taylor's complaint was initially processed and investigated by the EEOC alone. With respect to Taylor's complaint against the KCSD, it was processed by the EEOC as Charge No. 281–2003–03725, while her complaint against the PSRS was processed as Charge No. 281–2003–00789. On October 17, 2003, the EEOC terminated its proceedings as to Charge No. 281–2003–03725, without deciding whether the KCSD had engaged in unlawful discriminatory practices, and issued a "right-to-sue letter," a letter of probable cause that the complainant's employer had engaged in unlawful discriminatory practices. On November 7, 2003, the EEOC terminated its proceedings as to Charge No. 281–2003–03725, without deciding whether the PSRS had engaged in unlawful discriminatory practices, and issued a right-to-sue letter. Taylor's MHRA complaint against the KCSD and the PSRS remained pending before the MCHR.

On January 21, 2004, pursuant to § 213.111.1, Taylor filed a written request for the MCHR to issue a right-to-sue letter. On April 2, 2004, because the MCHR had not completed its investigation within 180 days, it issued her a right-to-sue letter. However, the letter only referenced the KCSD and made no mention of the PSRS. Taylor's complaint before the MCHR was dismissed upon the issuance of the letter. On April 27, 2004, the MCHR, having realized that Taylor's right-to-sue letter had failed to reference the PSRS, vacated the dismissal of Taylor's complaint and reopened it. On April 28, 2004, the MCHR

re-issued a right-to-sue letter to Taylor, referencing both the KCSD and the PSRS, and again dismissed her complaint. Although the record is not clear as to exactly when, at some point, Taylor, having been issued a right-to-sue letter, filed suit in the circuit court seeking damages against both KCSD and the PSRS for unlawful discrimination based on age.

On May 28, 2004, the PSRS filed a petition for a writ of mandamus in the Circuit Court of Cole County, Missouri, seeking to compel the MCHR: (1) to vacate the right-to-sue letter it issued on April 28, 2004, pursuant to 8 CSR 60–2.025(7)(D); (2) to comply with 8 CSR 60–2.025(8), by serving a copy of the complaint on the PSRS and Carter, and with 8 CSR 60–2.025(9), by giving the PSRS an opportunity to respond to the complaint; (3) to comply with § 213.075.3, by promptly investigating the complaint; and, (4) to process the complaint in accordance with state statutes, and properly promulgated rules and regulations. On September 20, 2004, the appellants filed a motion for summary judgment. On October 20, 2004, the respondents filed a motion for summary judgment. On November 19, 2004, the trial court denied the appellants' motion for summary judgment. On January 4, 2005, the trial court granted the respondents' motion for summary judgment.

This appeal follows.

### Standard of Review

In reviewing a summary judgment, we review *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993).

> The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary

judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (citation omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

> When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### I.

In Point I, the PSRS claims that the trial court erred in denying their motion for summary judgment on its petition for a writ of mandamus. Because we must determine our jurisdiction, *sua sponte*, in every case, *In re Care and Treatment of Bowles v. State*, 83 S.W.3d 93, 94 (Mo.App. 2002), and the denial of a summary judgment motion is not a final judgment subject to appeal, *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem*, 150 S.W.3d 364, 371 n. 3 (Mo.App. 2004), we must dismiss Point I.

### II.

In Point II, the PSRS claims that the trial court erred in *granting* the MCHR's motion for summary judgment, denying the PSRS's petition for a writ of mandamus, in which it sought, *inter alia*, an order of the circuit court setting aside the

right-to-sue letter issued by the MCHR to Taylor, with respect to the age-discrimination complaint she filed against the KCSD and the PSRS. They claim the court erred because a dispute exists as to whether the MCHR, as required by MCHR regulations and state statute, as conditions precedent for the issuance of a right-to-sue letter: (1) notified the PSRS of Taylor's complaint, in order to give them the opportunity to present to the MCHR an oral or written statement of its position; and, (2) promptly investigated the complaint.

 Pursuant to Rule 74.04, to be entitled to summary judgment, the movant must show that: (1) there is no genuine dispute as to the material facts on which the movant is relying for summary judgment; and (2) based on those undisputed facts, the movant is entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380; *Childress Painting & Assocs., Inc. v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 561 (Mo.App.2003). A movant's right to judgment as a matter of law differs significantly depending on whether that movant is a "claimant" or a "defending party." *Mo. Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 623 (Mo.App. 2004). If the movant is a defending party:

> a *prima facie* case for summary judgment can be established by employing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. Regardless of which

of these three means is employed by the defending party, each establishes a right to judgment as a matter of law.

*Childress Painting & Assocs., Inc.*, 106 S.W.3d at 561 (citations omitted).

Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." *Victory Hills Ltd. P'ship I v. NationsBank, N.A. (Midwest)*, 28 S.W.3d 322, 333 (Mo.App.2000). In his response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is proper for the movant. *Id.* A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

 Pursuant to § 213.085.2:

> [a]ny person who is aggrieved by a final decision, finding, rule or order of the commission may obtain judicial review by filing a petition in the circuit court of the county of proper venue within thirty days after the mailing or delivery of the notice of the commission's final decision.

Section 213.085.3 provides, in pertinent part: "Judicial review shall be in the manner provided by chapter 536, RSMo, as it may be amended or superseded from time to time." Section 536.150.1 provides, *inter alia*, for judicial review by way of a writ of

mandamus. Thus, mandamus was available to the PSRS for judicial review of the MCHR's decision, issuing the right-to-sue letter without notice to the PSRS of Taylor's complaint.

Here, the PSRS sought a writ of mandamus, pursuant to § 536.150.1, seeking an order of the circuit court mandating that the MCHR: (1) revoke the right-to-sue letter issued to Taylor on April 28, 2004; (2) notify the PSRS of Taylor's complaint, affording it an opportunity to present its position to the MCHR; (3) promptly investigate the complaint; and (4) follow the procedures required by the applicable regulations and statutes in issuing, pursuant to §§ 213.075 and 213.111, a right-to-sue letter to Taylor. In support of its petition, the PSRS alleged, *inter alia*, that the MCHR violated the required procedures for issuing a right-to-sue letter, as provided in §§ 213.075 and 213.111, by failing, as required by 8 CSR 60–2.025(8), to serve upon the PSRS a copy of Taylor's complaint, which resulted in the PSRS not being afforded an opportunity to "present an oral or written statement of its position," as provided in 8 CSR 60–2.025(9); and failing, as required by § 213.075(3),[4] to "promptly" investigate Taylor's complaint. Specifically, it claimed that the writ should have issued in that before a right-to-sue letter could issue to Taylor, the MCHR had a regulatory duty to give it notice of Taylor's complaint and a statutory duty to promptly investigate the complaint, such that the breach of one or both of those duties violated due process, with respect to

the issuance of the letter, mandating the setting aside of the letter.

█ Mandamus, pursuant to § 536.150, will lie where the MCHR's executive director's actions in issuing the right-to-sue letter violated prescribed procedures and applicable law. *See State ex rel. Martin–Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 608 (Mo. *banc* 2002) (holding that "section 536.150 gives [the complainant] the right to file a mandamus action to determine whether the executive director's actions 'were in fact accomplished under prescribed procedures and were lawful' "). The writ will not issue, however, unless prejudice results from the failure to follow proper procedure. *Id.*

█ The law of mandamus is well settled. Mandamus is a discretionary writ, and there is no right to have the writ issued. *State ex. rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. *banc* 1999). Mandamus will only issue when there is a showing of a clear and unequivocal right to the relief requested, based on a breach of a "present, imperative, unconditional duty" owed by the respondent. *State ex rel. Dehn v. Schriro*, 935 S.W.2d 641, 644 (Mo.App.1996) (citation omitted); *see also Mo. Growth Ass'n*, 998 S.W.2d at 788. The purpose of a writ of mandamus is to "execute, not adjudicate." *Mo. Growth Ass'n*, 998 S.W.2d at 788. Hence, mandamus will only issue to coerce a ministerial act and "cannot be used to control the judgment or discretion of a public official." *Id.* (citation omitted).

---

4. Section 213.075(3) reads:
 After the filing of any complaint, the executive director shall, with the assistance of the commission's staff, promptly investigate the complaint, and if the director determines after the investigation that probable cause exists for crediting the allegations of the complaint, the executive director shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion, and shall report the results to the commission. The investigation, determination of probable cause and conciliation shall be conducted according to such rules, regulations and guidelines as the commission shall prescribe.

From the record, it is clear that the PSRS, in its petition, was alleging two different bases for the issuance of a writ of mandamus, seeking, *inter alia,* a mandate that the MCHR vacate its right-to-sue letter issued to Taylor: (1) a breach of the MCHR's regulatory duty to notify the PSRS of Taylor's age-discrimination complaint; and, (2) a breach of the MCHR's statutory duty to promptly investigate Taylor's complaint. Thus, given these bases for the PSRS claim for mandamus and the law of mandamus, to be entitled to the relief it sought in its petition, the PSRS had the burden of showing that it had a clear and unequivocal right to the mandamus relief requested by showing that: (1) the MCHR had an unconditional duty imposed upon it, with respect to Taylor's age-discrimination complaint, to: (a) serve a copy of the complaint on the PSRS within thirty days of the filing of the complaint; and/or, (b) to promptly investigate the complaint; (2) one or both duties were breached; (3) the relief sought in the PSRS' petition for a writ of mandamus was to coerce the performance of an authorized ministerial act of the MCHR, rather than to control its judgment or discretion; and, (4) the PSRS was prejudiced by the MCHR's breach or breaches.

To be entitled to a full summary judgment, constituting a final and appealable judgment subject to appellate review, the MCHR, as a defending party, was required to show that the PSRS was *not* entitled to the issuance of a writ of mandamus on either theory pled—breach of the MCHR's regulatory duty to give notice to the PSRS of Taylor's complaint or its statutory duty to promptly investigate the complaint. *See Bost v. Clark,* 116 S.W.3d 667, 674 (Mo.App.2003). There never was a dispute, between the parties, that the MCHR had a regulatory duty to serve upon the PSRS, within thirty days after receipt, a copy of Taylor's verified complaint and a statutory duty to promptly investigate the complaint. There also never was a dispute, between the parties, that the MCHR breached its duty to give notice of the complaint to the PSRS. However, there was and is a dispute as to whether the MCHR satisfied its statutory duty to promptly investigate the complaint. In any event, in its motion for summary judgment, the MCHR alleged several bases for why mandamus should not issue as to either breach. Because we find that summary judgment was appropriate for the MCHR as to both breaches alleged by the PSRS for mandamus, we must affirm the circuit court's grant of summary judgment to the MCHR. We discuss separately each breach, *infra.*

## A. Breach of Duty to Give 8 CSR 60–2.025(8) Notice as Basis for Mandamus

 With respect to the PSRS's claim of mandamus, based on the MCHR's breach of the notice requirement of 8 CSR 60–2.025(8), the MCHR, employing the second means available to a defendant for summary judgment, alleged, *inter alia,* in its motion for summary judgment, that it was entitled to judgment as a matter of law on the PSRS's petition for mandamus in that the PSRS would never be able to prove, as required, that the MCHR's failure to notify the appellants of Taylor's complaint, so as to afford it an opportunity to present its position to the MCHR, as provided in 8 CSR 60–2.025(9), before issuing Taylor a right-to-sue letter, prejudiced it with respect to the issuance of the letter, which it seeks to vacate. Effectively, it asserted that the PSRS was not prejudiced by a lack of notice and an opportunity to assert its position as to Taylor's complaint in that regardless of whether notice had issued, so as to afford the PSRS an opportunity to present its position to the

MCHR, the right-to-sue letter would have issued, in any event, because 180 days had elapsed since the filing of the complaint, such that its right to notice of the complaint and opportunity to present its position was an "empty and barren technical right" on which mandamus would not issue. *See State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc.,* 966 S.W.2d 399, 403 (Mo.App.1998). In other words, as to this basis for summary judgment, with respect to the MCHR's breach of its duty to give notice of the filing of the complaint to afford the PSRS an opportunity to assert its position, the PSRS was contending essentially that such breach was not outcome determinative in that it in no way contributed to the issuance of the right-to-sue letter to Taylor, resulting in her MHRA claim being filed in the circuit court.

In accordance with § 213.075.3, when a MHRA complaint is filed, the MCHR executive director is required to "promptly investigate" to determine whether probable cause exists for "crediting" the complaint's allegations. However, pursuant to § 213.030.1(12), the MCHR is allowed to enter into work-sharing agreements with the EEOC. 8 CSR 60–2.025(9), the regulation governing the MCHR's duty to investigate, states that the executive director's investigation can be accomplished by reviewing the investigations of other civil rights agencies. If, after the initial investigation is complete, probable cause is found, the "executive director shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion." 8 CSR 60–2.025(11). If, however, the discriminatory practice cannot be eliminated, then the chairperson of the MCHR may, if "circumstances so warrant," cause a hearing to be held before a panel of at least three members of the MCHR or a "hearing examiner." § 213.075.5. The hearing is

to be conducted in accordance with Chapter 536. § 213.075.10. Pursuant to § 213.075.11(1), if after this contested hearing, the MCHR finds that the respondent had engaged in unlawful discriminatory practices, it is authorized to issue a cease and desist order, along with ordering other remedies provided. If, however, the MCHR finds that the respondent had not engaged in such practices, it must dismiss the complaint. § 213.075.12.

Pursuant to 8 CSR 60–2.025(9), as part of the investigation of the complaint, a respondent, given notice of a complaint, is to be afforded an opportunity to "present an oral or written statement of its position." The PSRS contends in its petition and on appeal that the failure of notice resulted in its not being afforded this opportunity, violating the regulatory and statutory due process required in issuing the right-to-sue letter. Hence, in this context, the resulting prejudice claimed by the PSRS for the MCHR's breach of its duty to give notice to the PSRS of the complaint, was the issuance of the letter without the PSRS being afforded its due process right of asserting its position on Taylor's complaint with the MCHR. In other words, the PSRS is essentially contending that had it been afforded an opportunity to present its position to the MCHR, based on a timely notice of the complaint, the proceeding before the MCHR would have ended differently— that it would have been terminated without probable cause being found to believe that the PSRS was engaging in unlawful discriminatory acts, and, thus, without a right-to-sue letter issuing to Taylor, enabling her to file suit in the circuit court.

Pursuant to the MHRA, § 213.111.1, a MHRA suit may be brought in the circuit court upon the issuance of a right-to-sue letter, a.k.a. a "probable cause letter." *State ex rel. Martin–Erb,* 77 S.W.3d at

603. Suit must be brought within 90 days of the issuance of the letter, but in no event, no later than two years after the alleged discriminatory act occurred or its "reasonable discovery by the alleged injured party." § 213.111.1. Once a right-to-sue letter has issued, all proceedings before the MCHR concerning a complaint are terminated. *Id.*

 Although not jurisdictional, a right-to-sue letter is a prerequisite to the filing of a MHRA claim in state court. *Igoe v. Dep't of Labor & Indus. Relations of the State of Mo.,* 152 S.W.3d 284, 287 (Mo. *banc* 2005). The purpose of requiring the issuance of the letter, prior to being allowed to file a MHRA claim in state court, is to afford the MCHR an opportunity to determine the validity of the complaint by investigating the complaint, to determine whether there is probable cause to believe that discrimination has occurred, and to hold a hearing. *Id.* As noted, however, by the Missouri Supreme Court in *Igoe,* pursuant to § 213.111, the MCHR may elect not to pursue a complaint and terminate its proceedings by issuing a right-to-sue letter. *Id.* at 287 n. 5. "This can be done *sua sponte* at any time within the statute of limitations period, *without completing the investigation.*" *Id.* (emphasis added). As the Court has recognized, the "right-to-sue letter to terminate administrative proceedings conserves the commission's resources, because termination by a finding of no probable cause requires an investigation and is subject to judicial review." *Id.* (citing *State ex rel. Martin–Erb,* 77 S.W.3d 600).

 As an alternative to the issuance of a right-to-sue letter by the MCHR, because it does not wish to pursue the complaint, pursuant to § 213.111.1, if the MCHR has not completed its administrative processing of the complaint within 180

days from the filing of the complaint, the complainant may file a written request for the issuance of a right-to-sue letter, which must be issued if requested. If, however, "no 'right to sue' letter is requested, the executive director must continue investigating the complaint to determine whether 'probable cause' exists to find discrimination." *State ex rel. Martin–Erb,* 77 S.W.3d at 604. Section 213.111.1 provides, in pertinent part:

> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice ..., the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such order against the respondent named in the complaint.

By the statute's express terms, the 180–day provision does not pertain to the merits of the complaint; rather, it deals with the time limit within which the MCHR has to act, one way or the other, before it must issue the letter. Thus, the issuance of a right-to-sue letter is: (1) a means by which the MCHR can, without investigation, choose not to proceed in processing the complaint; or, (2) is a function of the MCHR not completing the administrative processing of the complaint within 180 days of filing of the complaint.

Here, it is undisputed that the MCHR issued the right-to-sue letter to Taylor, pursuant to her written request and in accordance with § 213.111.1, because 180 days had elapsed after the filing of Taylor's complaint and the MCHR had not yet completed its processing of the complaint. Hence, to show prejudice from the MCHR's breach of its regulatory duty to give notice to the PSRS of Taylor's com-

plaint, so as to afford it the requisite opportunity to present its position to the MCHR and to prevent the issuance of the right-to-sue letter, the PSRS had to show that a determination of no probable cause would have been made by the MCHR and the proceeding dismissed within 180 days of the filing of the complaint, but for the alleged breach of the MCHR's duty to give notice to the PSRS, affording it an opportunity to present its position to the MCHR. Based on the record before us, we fail to see how the PSRS could have ever shown that if the MCHR had given notice to the PSRS of the complaints, as required by 8 CSR 60–2.025(8), so that the PSRS could have presented its position to the MCHR, as provided by 8 CSR 60–2.025(9), the MCHR would have made a no-probable-cause determination within 180 days of the filing of Taylor's complaint, such that it would not have been mandated, in accordance with § 213.111.1, to issue the right-to-sue letter to Taylor.

### B. Breach of Respondents' Duty to Promptly Investigate Complaint

■ As an additional basis for mandamus, the PSRS alleged in its petition that the MCHR breached its duty to "promptly investigate" Taylor's complaint, as mandated by § 213.075.3. As to this investigation breach, as an additional basis for mandamus for the PSRS, the MCHR alleged, *inter alia,* once again employing the second means available to a defending party for summary judgment, that, based on the summary judgment record, the PSRS would never be able to show, as required, that it breached its statutory duty to "promptly investigate" Taylor's complaint and even assuming, *arguendo,* that it could, as a matter of law, it was not a breach of a ministerial duty, entitling the PSRS to mandamus relief to revoke the right-to-sue letter issued to Taylor.

At the very least, there appears to be a factual issue over whether the MCHR breached its statutory duty to promptly investigate Taylor's complaint. In that regard, the MCHR alleged in its motion that, pursuant to a working agreement with the EEOC, and in accordance with 8 CSR 60–2.025(9), the MCHR was free to rely and did rely on the investigation of the EEOC in fulfilling its duty to promptly investigate. However, in violation of Rule 74.04(c)(1), the MCHR failed to include in its motion any specific references to the pleadings, discovery, exhibits, and affidavits to show that it actually reviewed the EEOC's investigation. Therefore, the alleged undisputed fact, that the MCHR reviewed the EEOC's investigation and adopted it as its own, is deemed struck from the summary judgment record. *Jones v. Hous. Auth. of Kansas City, Mo.,* 118 S.W.3d 669, 674–75 (Mo.App.2003). However, alternatively, the MCHR alleged in its motion that, as a matter of law, the breach of its duty to promptly investigate Taylor's complaint, as mandated by § 213.075.3, was not a breach of a ministerial duty, entitling the PSRS to the mandamus relief it seeks.

The requirement in § 213.075.3, that the MCHR executive director "promptly investigate" a complaint, does not require that the investigation be complete within 180 days. In fact, in providing in § 213.111.1 that a right-to-sue letter must issue upon written request after 180 days has elapsed since the filing of the complaint and the MCHR has not completed its administrative processing of the complaint, the legislature clearly understood that investigations could reasonably take longer than 180 days and intended that when one did, upon written request by the complainant, a right-to-sue letter would issue. When interpreting a statute, our primary goal is to determine the intent of the legislature from the language used and give effect to

that intent, if possible. *Long v. Interstate Ready–Mix, L.L.C.,* 83 S.W.3d 571, 576 (Mo.App.2002). Hence, the MCHR, by not completing its investigation and resolving Taylor's complaint *within 180 days* of complaint, in no way breached a ministerial duty owed to the PSRS. In other words, "promptly" in § 213.075.3 does not mean that the MCHR had a ministerial duty to complete its investigation and the processing of the complaint prior to the expiration of 180 days from the filing of the complaint.

In its petition, the PSRS, with respect to the MCHR's duty to investigate Taylor's complaint simply alleged that the MCHR "did not conduct an investigation of Mary Taylor's complaint" and that " § 213.075(3) provides that '[a]fter the filing of any complaint, the executive director shall ... promptly investigate the complaint ...'" Even accepting the fact that the MCHR did not commence an investigation within 180 days after the filing of Taylor's complaint, the PSRS was not, as a matter of law, entitled to mandamus relief ordering the MCHR to vacate or revoke the right-to-sue letter issued to Taylor. This is so in that as discussed, *supra,* the MCHR had no ministerial duty to complete its investigation and determine Taylor's complaint before 180 days had elapsed after the filing of the complaint, the basis on which the right-to-sue letter was issued to Taylor, so as to prevent the issuance of the letter, which the PSRS seeks to revoke or vacate.

Point denied.

### Conclusion

The circuit court's summary judgment for the MCHR and Cavitte, on the PSRS and Carter's petition for a writ of mandamus, is affirmed; while PSRS and Carter's appeal, as to the court's denial of its motion for summary judgment on its petition for mandamus, is dismissed for a lack of jurisdiction.

LOWENSTEIN and HOWARD, JJ., concur.