

# In the
# Missouri Court of Appeals
## Western District

STATE OF MISSOURI, EX REL.
TIVOL PLAZA, INC.,

   **Appellant,**

v.

MISSOURI COMMISSION ON
HUMAN RIGHTS,

   **Respondent.**

WD78477

OPINION FILED:

April 12, 2016

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Court En Banc:**
**Joseph M. Ellis, Senior Judge Presiding,[1] Alok Ahuja, Chief Judge, Victor C. Howard,**
**Thomas H. Newton, Lisa White Hardwick, James Edward Welsh, Mark D. Pfeiffer, Karen**
**King Mitchell, Cynthia L. Martin, Gary D. Witt, and Anthony Rex Gabbert, Judges**


Tivol Plaza, Inc. appeals the circuit court's dismissal of its petition for preliminary and permanent writ of mandamus against the Missouri Commission on Human Rights. Because the circuit court denied Tivol's petition for writ of mandamus without issuing a preliminary order, Tivol's proper course was to file its writ in a higher court. We, therefore, dismiss Tivol's appeal.

On December 18, 2013, Karen Norton, a former employee who worked at two of Tivol's retail jewelry stores in Kansas City, filed a complaint against Tivol with the Commission

---

[1]Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as a Senior Judge.

asserting claims of retaliation, sex discrimination, age discrimination, and a hostile work environment. Tivol, in its statement of position, challenged the timeliness of a number of Norton's allegations. Tivol expressly requested that, if the Commission chose to issue a right-to-sue notice without first dismissing the complaint's untimely aspects, the Commission make "specific factual findings sufficient for a circuit court to determine whether the Commission acted appropriately in issuing the Notice of Right to Sue." Tivol further stated that it would regard the Commission's failure to make such findings to constitute an arbitrary or capricious administrative action and an abuse of the Commission's discretion under section 536.150.1, RSMo 2000.

At Norton's request and more than 180 days after Norton filed her complaint with the Commission, the Commission issued a right-to-sue notice pursuant to section 213.111.1, RSMo 2000, and 8 C.S.R. 60-2.025(7)(B). According to the notice, the Commission had not completed the administrative processing of the complaint, "including determinations of jurisdiction."

Within 30 days of the issuance of the right to sue notice, Tivol filed a petition for preliminary and permanent writ of mandamus with the Circuit Court of Cole County, challenging the Commission's issuance of the right to sue notice. Tivol requested that the circuit court vacate the right to sue notice and order the Commission to determine whether or not Norton's charges had been timely filed. Relying on *Farrow v. St. Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013), Tivol claimed that the Commission had a statutory duty to determine the timeliness of Norton's charges and that the Commission lacked the authority to issue a right to sue notice if Norton's charges were not timely filed. Tivol asserted that mandamus was appropriate because the Commission failed to "perform the ministerial act of determining whether it had jurisdiction over the entirety of the allegations within the Charge."

2

After Tivol filed the petition for mandamus, the circuit court issued summonses rather than issuing a preliminary order in mandamus. The Commission then filed a motion to dismiss alleging that Tivol's petition failed to state a cause of action. Thereafter, the circuit court dismissed Tivol's petition. Tivol appeals from that dismissal.

Tivol asserts three points on appeal: (1) the circuit court erred in dismissing its petition for preliminary and permanent writ of mandamus because the Commission had a ministerial duty to determine its jurisdiction to issue the notice of right to sue and to dismiss any untimely claims; (2) the circuit court erred in dismissing its petition for preliminary and permanent writ of mandamus because mandamus was appropriate under section 213.085.2, RSMo 2000, section 536.150, RSMo 2000, and the Missouri Supreme Court's decision in *Farrow*; and (3) the circuit court erred in finding that Tivol had preserved its right to raise the untimeliness issue in a subsequent civil action because *Farrow* mandates that the proper procedure for challenging the Commission's issuance of a notice of right to sue on untimely claims is by seeking judicial review of the Commission's administrative action.

Before we can address the merits of Tivol's claims, we must first determine whether we have authority to entertain this appeal. *Powell v. Dep't of Corrections*, 463 S.W.3d 838, 840 (Mo. App. 2015). We have a "duty to determine, *sua sponte*, whether the circuit court entered a final appealable judgment before substantive review of the issues presented on appeal." *Banks v. Slay*, 410 S.W.3d 767, 768 (Mo. App. 2013). "'Generally, when the circuit court denies a petition for writ of mandamus, the petitioner's proper course of action is not to appeal the denial but to file the writ in a higher court.'" *Powell*, 463 S.W.3d at 840 (quoting *Stone v. Mo. Dep't of Corrections, Prob. & Parole Bd.*, 313 S.W.3d 158, 160 (Mo. App. 2010)). "'By contrast, where a preliminary [order] is granted and the court then determines on the merits whether the writ

3

should be made permanent, or quashed, then appeal is the proper remedy.'" *Powell*, 463 S.W.3d at 480 (quoting *Wheat v. Mo. Bd. of Prob. & Parole*, 932 S.W.2d 835, 838 (Mo. App. 1996)).

The problem in this case is that the circuit court did not issue a preliminary order in mandamus as provided in Rule 94.04. Instead, the circuit court issued a summons, a procedure not authorized by Rule 94.[2] Indeed, the Supreme Court of Missouri has acknowledged that the issuance of a summons by the circuit court instead of a preliminary order is not authorized by Rule 94. *U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 359 n.1 (Mo. banc 2013).[3] In *Boresi*, however, the Supreme Court chose to exercise its discretion to consider the case before it on the merits[4] and issue a writ even though the circuit court issued a summons rather than a preliminary order. In doing so, the Court stated:

> An appeal will lie from the denial of a writ petition when a lower court has issued a preliminary order in mandamus but then denies a permanent writ. Likewise, when the lower court issues a summons, the functional equivalent of a preliminary order, and then denies a permanent writ, appellate review is available.

[2]Rule 94 prescribes the following procedure:

First, a relator initiates a proceeding by filing a petition for a writ of mandamus in the appropriate circuit court. Next the circuit court considers the petition and determines if a preliminary order of mandamus should issue. If the circuit court does not grant a preliminary order in mandamus, the petitioning party then must file its writ petition in the next higher court. If the circuit court, however, is of the opinion that the preliminary order in [mandamus] should be granted, such order shall be issued. The preliminary order in mandamus directs the respondent to file an answer within a specified amount of time, and it also may order the respondent to refrain from all or some action. If the court issues a preliminary order in mandamus, any final decision is reviewable by appeal.

*Powell*, 463 S.W.3d at 841 (quoting *U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 364 (Mo. banc 2013) (Fischer, J., concurring) (footnotes omitted)).

[3]Specifically, the *Boresi* court said: "[T]he city of St. Louis circuit court's practice of issuing a summons in lieu of a preliminary writ is not authorized by Rule 94. Writs are extraordinary remedies, and their procedures differ from normal civil actions. The practice of issuing a summons rather than a preliminary order fails to acknowledge the nature of the remedy. Additionally, it requires a response from the respondent without regard to the merits of the petition." 396 S.W.3d at 359 n.1 (footnotes omitted).

[4]The *Boresi* court stated that it was "exercising its discretion to consider the matter on the merits . . . because the parties . . . were not at fault and should not be required to initiate a new writ proceeding due to the circuit court's failure to follow the procedure proscribed by the rules." *Id*.

4

*Id*. at 358-59 (citations omitted). In exercising its discretion to consider the merits, the Court made clear that it was "not required to exercise its discretion in like manner in the future." *Id*. at 359 n.1. In a concurring opinion in *Boresi*, Judge Fischer went even further and declared that a summons should not be allowed "to be a substitute for a preliminary order in any future case." *Id*. at 366.

Since *Boresi*, this court and this court's Eastern District have addressed the issue of whether we have the authority to entertain an appeal in cases where the circuit court issued summonses rather than preliminary orders. *Powell*, 463 S.W.3d at 840; *Banks*, 410 S.W.3d at 771.[5] In both cases, the courts either dismissed the appeal or denied the plaintiff's request for a writ. *Powell*, 463 S.W.3d at 843; *Banks*, 410 S.W.3d at 771.

In *Powell*, the court opined that, in "[r]eading the majority's comments and the concurring opinion [in *Boresi*] together, it is clear that the Supreme Court is directing circuit courts to discontinue the practice of issuing a summons in lieu of a preliminary order in mandamus or prohibition." 463 S.W.3d at 842. Further, the *Powell* court noted: "It is likewise clear that, in the future, it is highly unlikely that the Missouri Supreme Court will exercise its discretion to hear an appeal on the merits where a summons, rather than a preliminary order, was issued by the circuit court." *Id*. The *Powell* court determined that, based upon the perceived guidance in *Boresi*, that courts "generally should decline to exercise [their] discretion to hear appeals on the merits in writ proceedings where a summons rather than a preliminary order has been issued by

---

[5]Compare *In re the Matter of R.M.A.*, 477 S.W.3d 185 (Mo. App. 2015), in which this court found that, where the parties and the circuit court proceeded as if a petition for writ of mandamus initiated an ordinary civil action without any regard to the requirements of Rule 94 and the circuit court denied the petition, the plaintiff did not have the right to appeal the circuit court's denial of the petition but had the right to file the petition in a higher court. *Id*. at 189-90. The court stated: "We decline to recast [the appellan'ts] appeal as the filing of a denied writ in this court . . . . To do so now, two and a half years after *Boresi* was decided, would 'perpetuate a procedural process that is not authorized by Rule 94 and is disfavored by the Supreme Court of Missouri.'" *Id*. at 190 n.10 (quoting *Banks*, 410 S.W.3d at 771).

5

the circuit court." *Id*. The court stated that it was unfortunate that the circuit court had issued a summons rather than following the procedure set forth in Rule 94 and encouraged all circuit courts "to follow the writ procedures set forth in Rule 94 (writs of mandamus) and Rule 97 (writs of prohibition), especially with respect to the issuance of preliminary orders." *Id*. The *Powell* court concluded that, because the circuit court denied the writ without issuing a preliminary order, "Appellant's proper course was to file his writ in a higher court." *Id*. at 842-43. The court, therefore, declined to hear the appeal on the merits and dismissed the appeal. *Id*. at 843.

In *Banks*, this court's Eastern District noted that the circuit court failed to follow the procedure set forth in the rules by issuing a summons and stated that "our Supreme Court has indicated this failure will not be condoned." 410 S.W.3d at 768. The *Banks* court concluded: "Rather than perpetuate a procedural process that is not authorized by Rule 94 and is disfavored by the Supreme Court of Missouri . . ., this court denies the writ without prejudice to seeking an original writ in the Supreme Court of Missouri." *Id*. at771. The *Banks* court further instructed, "In the future, our circuit courts should follow the procedure set out in Rule 94 rather than issue a summons." *Id*.

As decided in *Powell* and *Banks*, we refuse to perpetuate a procedural process that is not authorized by Rule 94. "The rules of civil procedure are 'rules of practice and procedure to promote the orderly administration of justice.'" *Sitelines, LLC v. Pentstar Corp*., 213 S.W.3d 703, 707 (Mo. App. 2007) (quoting *Mello v. Williams*, 73 S.W.3d 681, 685 (Mo. App. 2002)). "When properly adopted, the rules of court are binding on courts, litigants, and counsel, and it is the court's duty to enforce them." *Sitelines*, 213 S.W.3d at 707 (cited with approval in *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012)). The courts, litigants, and counsel were clearly put on notice that the practice of issuing a summons in lieu of a preliminary writ is not authorized by

6

Rule 94. And, although the *Boresi* court said that appellate review is available when a lower court issues a summons and denies a permanent writ, the court clearly stated that it was not required to exercise its discretion in the future. 396 S.W.3d at 359 and n.1. We agree with *Powell* that the Missouri Supreme Court was signaling that, in future cases, it was highly unlikely that courts would exercise their discretion to hear appeals on the merits where the circuit court issued a summons, rather than a preliminary order. 463 S.W.3d at 842. Indeed, if the Supreme Court Rules are truly binding on courts, litigants, and counsel as case law declares, then courts, litigants, and counsel must be bound by the procedures set forth in Rule 94, especially since *Boresi* put them on notice of the obligation to comply with those procedures almost three years ago. Thus, while we have the discretion to hear appeals on the merits in cases in which the circuit court issues a summons rather than a preliminary order, as an intermediate appellate court charged with the duty to enforce the Supreme Court Rules, we do not believe it is our place to continually excuse compliance with the procedural rules written by the Missouri Supreme Court. We find this especially true given that Tivol's recourse in this case is simple—Tivol merely needs to file its writ in a higher court.

Further, we note that, even if we felt compelled to exercise our discretion to hear Tivol's appeal in this case, we would deny the writ because this is not a proper mandamus case. "The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial

duty that one charged with the duty has refused to perform."[6] *Furlong Cos., Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006). "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." *Id.* at 166. Mandamus is not used "to establish a legal right; it may only be used to compel performance of a right that already exists. The writ's purpose is to execute, not to adjudicate." *Lemay v. Fire Protection Dist.*, 340 S.W.3d 292, 295 (Mo. App. 2011) (citations omitted). There is nothing ministerial about the determination concerning timeliness in this case. Timeliness is an issue that can require extensive investigation that may not be concluded within 180 days because it is subject to "the principles of waiver, estoppel, and equitable tolling, including the 'continuing violation' theory' exception." *Tisch v. DST, Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. App. 2012). These are not

---

[6]Section 536.150.1 provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

In providing judicial review pursuant to section 536.150, the legislature was not creating a new statutory writ of mandamus free of all the traditional notions of the writ. Although that section provides for review by injunction, certiorari, mandamus, prohibition or other appropriate action, it is incumbent upon a party to pick from the laundry list the appropriate method to obtain review. It should not be up to this court to choose or designate the appropriate method of review to save a party's appeal.

8

matters that the Commission can necessarily decide on the face of the discrimination charge alone.

Based on the foregoing, we decline to exercise our discretion to hear Tivol's appeal on the merits. Because the circuit court denied Tivol's petition for writ of mandamus without issuing a preliminary order, Tivol's proper course was to file its writ in a higher court. We, therefore, dismiss Tivol's appeal.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

Judge James Edward Welsh writes for the majority. Senior Judge Joseph M. Ellis, Judges Victor C. Howard, Mark D. Pfeiffer, Gary D. Witt, and Anthony Rex Gabbert concur.

Chief Judge Alok Ahuja dissents in separate opinion.

Judge Thomas H. Newton dissents in separate opinion. Chief Judge, Alok Ahuja concurs in Part II of Newton's dissent. Judges Lisa White Hardwick, Karen King Mitchell, and Cynthia L. Martin concur.



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. TIVOL PLAZA, INC., | ) ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78477 |
| | ) | |
| MISSOURI COMMISSION ON HUMAN RIGHTS, et al., | ) ) | **FILED:** April 12, 2016 |
| Respondents. | ) | |

### DISSENTING OPINION

The majority opinion dismisses Tivol's appeal of the circuit court's denial of mandamus relief, because at the commencement of the action the circuit court issued a summons, rather than a preliminary order in mandamus, to require the respondent to answer Tivol's petition. According to the majority, this procedural defect divests this Court of jurisdiction to hear Tivol's appeal, even though the respondent never objected –in the circuit court or in this Court – to the form of process which brought it before the court.

Unlike the majority, I believe that Tivol had a *right* to appeal the circuit court's dismissal of its mandamus petition, because the circuit court considered and rejected Tivol's petition on the merits. The process which was employed to bring the Commission before the circuit court is irrelevant to our appellate jurisdiction, particularly since the Commission could have, but did not, object to the form of process served upon it. Even if the exercise of appellate jurisdiction in this

case were discretionary, I would agree with Judge Newton that this case justifies an exercise of that discretion, to provide much-needed guidance to the Commission, employers, and employees in this needlessly confused, and frequently litigated, area of the law.

On the merits, I agree with Judge Newton that, under the Missouri Supreme Court's decision in *Farrow v. St. Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013), Tivol is entitled to judicial review in the circuit court of the timeliness of Norton's administrative charge of discrimination. As Judge Newton's opinion explains, *Farrow* makes crystal clear that the timeliness of an administrative complaint cannot be raised as a defense in the employee's later discrimination lawsuit, but must instead be litigated in a separate judicial review proceeding. This holding departs from prior Missouri caselaw (without acknowledging the earlier decisions), and is inconsistent with the federal practice in similar employment discrimination cases. The holding in *Farrow* also appears to foster inefficiencies, since it requires the litigation of a single, discrete issue (the timeliness of an employee's administrative complaint) in a lawsuit separate from, and in addition to, the employee's discrimination action where all of the employer's other defenses will be resolved. Nevertheless, we are bound by the Missouri Constitution to follow *Farrow* unless and until it is modified or overruled by the Supreme Court itself.

## Discussion
### I.

Contrary to the majority, I believe that Tivol had a *right* to appeal the circuit court's judgment, even though at the commencement of this mandamus proceeding the circuit court failed to issue a preliminary order in mandamus, but instead issued a summons directing the Commission to respond to Tivol's petition. As the majority notes, in *United States Department of Veterans Affairs v. Boresi*, 396 S.W.3d 356 (Mo. banc 2013), the Missouri Supreme Court

2

recognized that the use of a summons, rather than a preliminary order in mandamus, violates

Rule 94. *Id.* at 359 n.1. Despite this procedural defect the Court stated:

> An appeal will lie from the denial of a writ petition when a lower court has issued a preliminary order in mandamus but then denies a permanent writ. Likewise, when the lower court issues a summons, the functional equivalent of a preliminary order, and then denies a permanent writ, *appellate review is available*.

*Id.* at 358-59 (emphasis added; citing *State ex rel. Ashby Road Partners, LLC v. State Tax Comm'n*, 297 S.W.3d 80, 83 (Mo. banc 2009)). *Ashby Road*, on which *Boresi* relies, holds that, where a summons rather than a preliminary order is issued, the circuit court's denial of a writ petition on the merits "trigger[s] [the relators'] *right to appeal*"; in other words, the relators are "*entitled to appeal*, on the merits, the circuit court's judgment denying their petition in prohibition." 297 S.W.3d at 84 (emphasis added).

In a concurring opinion in the *Boresi* case, Judge Fischer stated that he "would not authorize an appeal" where a trial court issued a summons rather than a preliminary order in response to the filing of a mandamus petition. 396 S.W.3d at 365. Although Judge Fischer agreed with the majority that the appeal in *Boresi* itself should be decided on its merits, "I would not allow a summons to be a substitute for a preliminary order in any future case." *Id*. at 366. No other member of the Court joined Judge Fischer's concurring opinion.

*Boresi*'s holding – that a trial court's denial of a mandamus petition is reviewable by appeal where the trial court addresses the merits of the petition, even if a summons rather than a preliminary order was served on the respondent – is consistent with earlier decisions which held that the availability of an appeal depends on whether the trial court addressed the merits of a mandamus petition, without regard to the procedures by which the respondent was brought into

the litigation.[1] The fact that Judge Fischer argued that appellate review should not be available where no preliminary order was issued, and that no other judge joined his opinion, only reinforces that the majority in *Boresi* did not intend to limit or deny appellate jurisdiction in these circumstances.

I recognize that, in a footnote, the majority opinion in *Boresi* states that the Court was "exercising its discretion to consider the matter on the merits," and that "[t]his Court is not required to exercise its discretion in like manner in the future." 396 S.W.3d at 359 n.1. These statements, suggesting that an appellate court has *discretion* to refuse an appeal from what is otherwise a final judgment, must be read in harmony with the statements in the text of *Boresi*, and in *Ashby Road*, that "appellate review is available," and that relators have a "right" and "entitle[ment]" to appeal, in these circumstances.

It would be surprising for the Supreme Court to hold that the trial court's failure to follow preliminary procedures in a mandamus proceeding defeats the relator's right to appellate review, particularly where the respondent has not objected to any procedural defects in the trial court. *Boresi* explained that the primary purpose of requiring the trial court to issue a preliminary order is to ensure that the court has made a preliminary evaluation of the petition's merits before the respondent is put to the burden of answering. 396 S.W.3d at 359 n.1.[2] Respondents in writ proceedings are perfectly capable of asserting their own interests if they are denied the protection

---

[1] *See*, *e.g.*, *Williams v. Gammon*, 912 S.W.2d 80, 83 (Mo. App. W.D. 1995) (Stith, J.) (addressing merits of appeal where respondent filed, and trial court granted, motion to dismiss which addressed the merits of the writ petition, although trial court had not issued a preliminary order); *State ex rel. Schaefer v. Cleveland*, 847 S.W.2d 867, 870 (Mo. App. E.D. 1992) ("Where the court below dismisses the petition following answer or motion directed to the merits of the controversy and in so doing determines a question of fact or law the order is final and appealable," even though the circuit court issued no preliminary order or alternative writ requiring the respondent to answer).

[2] *See also id.* at 365 & n.6 (Fischer, J., concurring) ("The purpose of requiring a preliminary order at the outset of a writ proceeding is to require some judicial evaluation of the claim to determine if the respondent should even be required to answer the allegations," and potentially to prohibit action by the respondent until further order).

4

a preliminary order affords. Nothing prevents a respondent from objecting to the issuance of a summons, rather than a preliminary order, if it cares to do so, such as by filing a motion to quash the summons. I fail to see why an appellate court would raise such procedural defects on its own motion, where a respondent has appeared without objection in response to a summons, or voluntarily appeared without the issuance of *any* judicial process. In all other civil actions, it is well-established that a defendant must raise objections to the manner in which the case was commenced in the trial court at an early stage, or else those issues are waived. This is true, for example, with respect to claims that process or service of process were defective, that the court lacks personal jurisdiction over the defendant, or that suit was filed in the wrong venue.[3] I cannot conceive of appellate courts raising such matters on their own motion (except in the rare circumstances where "plain error" review may be available). The same rule should apply where a respondent in a mandamus proceeding has responded to the petition on the merits, without objecting to the circuit court's failure to issue a preliminary order.[4]

---

[3] *See*, *e.g.*, Rule 55.27(g) (specifying that various procedural defenses, including lack of personal jurisdiction, insufficiency of process or service of process, and the plaintiff's capacity to sue, are waived if not raised in a responsive pleading, or by motion to dismiss); *C.J.G. v. Mo. Dep't of Soc. Servs.*, 219 S.W.3d 244, 248 (Mo. banc 2007) ("A claim of lack of personal jurisdiction may be waived when a defendant makes no motion or pleadings on the issues but otherwise subjects himself to the jurisdiction of the court."); *Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000) ("A defending party who wishes to raise defenses of lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process must do so either in a pre-answer motion or in the party's answer."); *State ex rel. Buffington v. Gaertner*, 657 S.W.2d 957, 958 (Mo. banc 1983) (any challenge concerning the manner in which process was served "is waived by the filing of an answer without having raised or then raising the issue as to service"); *Bizzell v. Kodner Dev. Corp.*, 700 S.W.2d 819, 822 (Mo. banc 1985) ("By answering plaintiffs' petition without raising any objection to venue and failing to file any motion asserting improper venue until six months later, the City effectively waived venue. Statutes fixing venue confer a mere personal privilege which may be waived by the party entitled to assert it.").

[4] Mandamus relief is a species of equitable relief, and it would appear that relief similar to that afforded by mandamus can be obtained by injunction in most, if not all, cases. *See*, *e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (referring to "injunction, mandamus, and restitution" as "categories of relief that were *typically* available in equity"); *Pulliam v. Allen*, 466 U.S. 522, 529 (1984) (treating writs of prohibition and mandamus as "a common-law parallel to the § 1983 injunction at issue here"); *Stern v. South Chester Tube Co.*, 390 U.S. 606, 609 (1968) (stating that "[t]he distinction drawn [in an earlier case] between mandamus and a mandatory injunction seems formalistic in the present day and age," following the merger of law and equity); 12 C.A. Wright, A.R. Miller & R.L. Marcus, FEDERAL PRACTICE & PROCEDURE § 3134, at 481 (1997) (following the abolition of the writ of

5

In *Powell v. Department of Corrections*, 463 S.W.3d 838 (Mo. App. W.D. 2015), this Court read *Boresi* to signal that, "in the future, it is highly unlikely that the Missouri Supreme Court will exercise its discretion to hear an appeal on the merits where a summons, rather than a preliminary order, was issued by the circuit court." *Id.* at 842. *Powell* reached this conclusion, in part, based on statements in Judge Fischer's concurring opinion, even though no other member of the Court joined it. *Id.* at 841. *Powell* also relied on a perceived distinction between *Boresi*'s statement that "'[a]n appeal *will lie*'" where the trial court resolves the merits of a mandamus petition following issuance of a preliminary order, *versus* its statement that "'appellate review *is available*'" where the trial court issues a summons rather than a preliminary order. *Id.* at 840-41 (quoting *Boresi*, 396 S.W.3d at 359; emphasis altered). I do not believe this minor wording difference has the significance *Powell* attaches to it. *Boresi* states that appellate review is "[l]ikewise" available following issuance of a summons, indicating that appellate review is available "in like manner" or "similarly" to the way in which appeals may be taken following the issuance of a preliminary order. WEBSTER'S THIRD NEW INT'L DICTIONARY at 1310 (1993). In addition, *Boresi* cites and follows the *Ashby Road* decision, which stated more clearly that relators have a "right" and "entitle[ment]" to appeal, despite the issuance of a summons rather than a preliminary order.

We gave even broader meaning to *Boresi* in *R.M.A. v. Blue Springs R-IV School District*, 477 S.W.3d 185 (Mo. App. W.D. 2015). *R.M.A.* held that, where a respondent voluntarily

mandamus in federal trial-court practice, "mandatory relief may be obtained by means of a mandatory injunction"); 52 AM.JUR.2d, Mandamus § 6, at 334 (2011) ("A writ of mandamus is an equitable remedy, akin to specific performance."); 43A C.J.S., Injunctions § 4, at 22 (2014) ("Mandamus is a form of mandatory injunction and is governed by the same considerations, and they are alike in essential respects and comparable in nature and function."). While a petitioner may be subject to demanding *substantive* standards to establish a right to mandamus relief, it seems difficult to justify the application of vastly different *procedural* requirements to mandamus proceedings, as compared to the rules applicable in other civil actions.

appears in a mandamus proceeding, without the trial court's issuance of *either* a preliminary

order or summons, _no_ right to appellate review exists, despite the fact that the trial court disposed

of a mandamus petition on the merits. *R.M.A.* explains:

> Plainly, *Boresi* holds that the ability to seek appellate review from the denial of a permanent writ (as opposed to the right to file a denied writ in a higher court) is tied to compliance with the provisions of Rule 94. In light of *Boresi*, we cannot discern a reasoned path that would permit this court to conclude that an appeal will lie as a matter of right merely and solely because a permanent writ is denied by a lower court on the merits. Instead, we conclude, as is already stated in *Boresi*, that an appeal will lie as a matter of right only where a permanent writ of mandamus is denied by a lower court on the merits after that court has issued a preliminary writ. And if Rule 94 is not followed, then there is no right of appeal from the denial of a permanent writ of mandamus (even if on the merits), with the narrow proviso that an appeal may be permitted as a matter of discretion where a permanent writ of mandamus is denied on the merits after a trial court has issued a summons that can be fairly characterized as the "functional equivalent" of a preliminary writ.

*Id.* at 188-89 (citations and footnotes omitted).

With all respect to my colleagues who decided the *Powell* and *R.M.A.* cases, I believe

those decisions fundamentally misread *Boresi*. As explained above, *Boresi* cannot fairly be read

to limit the circumstances in which appellate review is available following the trial court's denial

of a mandamus petition on the merits. I believe *Powell* and *R.M.A.* were wrongly decided, and

should be overruled. As before, we should continue to hold that a relator may appeal the denial

of its petition for mandamus where the trial court has denied the petition on its merits, whatever

preliminary procedures (if any) were employed to secure the respondent's participation in the

mandamus proceeding.[5]

---

[5]    The majority characterizes the issue as one of our "authority" to hear Tivol's appeal, presumably intending to distinguish the issue from one affecting our appellate *jurisdiction*. Despite the majority's characterization, however, this certainly looks like a "jurisdictional" issue, since it is an issue which the Court has raised *sua sponte*, over the objection of all parties, and which has the effect of completely denying review by appeal in an entire category of cases. Moreover, although the majority opinion states that "we have the discretion to hear appeals on the merits" in these circumstances, it is plain that, following the majority opinion, no such discretion survives (if it

7

## II.

On the merits, I agree with the conclusion of Judge Newton's dissenting opinion that, under *Farrow v. St. Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013), Tivol is entitled to judicial review of the Commission's issuance of the right to sue letter, and a judicial determination of its claim that Norton's administrative charge was untimely in substantial part.

In *Farrow*, the Supreme Court held that an employer should have raised its claim concerning the untimeliness of an employee's administrative charge before the Commission, and then sought judicial review of the Commission's issuance of the right to sue letter under § 536.150, RSMo. *Farrow* found that the Commission's issuance of a right to sue letter, even one stating that the Commission had been unable to conclude its investigation, constituted a "final decision, finding, rule or order" subject to judicial review pursuant to §§ 213.085 and 536.150. 407 S.W.3d at 589-90 & n.5. The Court held that, in that judicial review proceeding, the employer could have "challeng[ed] the Commission's jurisdiction to issue the right to sue letter based on its belief [that the employee's administrative complaint] was untimely." 407 S.W.3d at 590.

The *Farrow* opinion contains a second, equally important, and related holding. Besides holding that the timeliness of an administrative charge could be litigated in a judicial review proceeding, the Court *also* held that the issue could <u>not</u> be raised in a discrimination lawsuit filed by the employee subsequent to the Commission's issuance of a right to sue letter. The employee in *Farrow* argued that the purported untimeliness of her administrative charge could not support

---

ever existed). The majority opinion makes clear that the Court considers itself bound to enforce its reading of Rule 94 and *Boresi* by denying appellate review in *every* case. For example, the majority justifies its disposition by observing that Tivol can file a writ petition in a higher court; but that same observation can be made in every case in which a mandamus petitioner is denied relief in the circuit court. "Discretion" is hardly worthy of the name if it cannot, or will not, ever be exercised.

dismissal of her discrimination claims, because "section 213.111 does not contain any express requirement that she timely file her claim with the Commission below as a prerequisite to filing her state court action." *Id.* at 591. The Court agreed.

> Section 213.111 governs the filing of a suit alleging violations of the MHRA in circuit court and states:
>
>> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice . . ., the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint . . . . Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge . . . . Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.
>
> Section 213.111.1. Thus, the only requirements imposed by section 213.111 to file a claim under the MHRA are that: (1) an employee file a charge with the Commission prior to filing a state court action; (2) the Commission issue a right to sue letter; and (3) the state court action be filed within ninety days of the issuance of the right to sue letter but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party. **The statute does not read, "If, after one hundred eighty days from the filing of a *timely* complaint . . . ." This Court will not read such a requirement into the plain statutory language.**

*Id.* at 591 (boldface emphasis added).

Right or wrong, this is the only plausible way to read the *Farrow* decision: the timeliness of an administrative charge *can* be raised in a proceeding seeking judicial review of the Commission's issuance of a right to sue letter, but that issue *cannot* be raised in the employee's later discrimination lawsuit. Prohibiting Tivol from seeking judicial review under § 536.150 would leave it with *no* judicial forum in which to challenge the timeliness of Norton's

9

administrative charge. An employer cannot be denied *any* avenue to have this issue decided by the courts.

Prior to *Farrow*, a series of decisions (including at least one Missouri Supreme Court decision) had considered the timeliness of an employee's administrative charge as a defense in the employee's discrimination lawsuit.[6] *Farrow* does not cite these earlier decisions, although it apparently overruled them *sub silentio*. The procedure followed under Title VII of the federal Civil Rights Act of 1964 is similar to the pre-*Farrow* Missouri practice: an employer can challenge the timeliness of an employee's administrative charge in the employee's discrimination lawsuit itself.[7] *Farrow* offers no justification for its refusal to follow the earlier Missouri and federal decisions.

Practical considerations appear to support the pre-*Farrow* practice. The Commission has limited resources to address administrative charges of discrimination. Requiring the Commission to defend its issuance of right to sue letters in judicial review proceedings only diverts its already limited resources away from the investigation and resolution of discrimination claims. I also question whether the Commission has any interest in litigating the timeliness of an employee's administrative complaint where it has terminated its investigation without reaching a definite conclusion on the merits of the employee's claims.

---

[6]      *See*, *e.g.*, *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 685-86 (Mo. banc 2009); *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 252-55 (Mo. App. W.D. 2012); *Grissom v. First Nat'l Ins. Agency*, 364 S.W.3d 728, 734-35 (Mo. App. S.D. 2012); *Thompson v. Western-Southern Life Assur. Co.*, 82 S.W.3d 203, 206-08 (Mo. App. E.D. 2002); *Pollock v. Wetterau Food Distrib. Grp.*, 11 S.W.3d 754, 763-64 (Mo. App. E.D. 1999). At least one federal-court decision has continued this practice, even after *Farrow*. *Gillespie v. Charter Communics.*, 31 F. Supp.3d 1030, 1033 (E.D. Mo. 2014).

[7]      *See*, *e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 386 (1982) ("Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."; footnote omitted); *Delaware State College v. Ricks*, 449 U.S. 250 (1980).

10

Moreover, where the Commission issues a right to sue notice, an employee's claim under the Missouri Human Rights Act has not been finally resolved, and further litigation of that claim is possible. Unless and until a discrimination lawsuit is filed, the timeliness of an administrative charge, and the propriety of the Commission's issuance of a right to sue letter, may be of solely academic interest even to the employer and employee. *If* the employee in fact files a discrimination lawsuit, the timeliness of the administrative charge may then become a "live issue." If and when that occurs, the issue could be litigated in the discrimination lawsuit, by the interested parties and without the Commission's involvement, along with any other affirmative defenses the employer desires to raise. It seems unnecessary – and inefficient – to mandate collateral litigation, in the form of judicial review proceedings under §§ 213.085 and 536.150, with respect to this single defense.

The Supreme Court could have accommodated these policy concerns in *Farrow* by holding that, where the Commission issues a right to sue letter on the basis that it has been unable to complete its investigation, the issuance of the letter does not constitute a "final decision, finding, rule or order" concerning the timeliness of the employee's charge, subject to judicial review pursuant to §§ 213.085 and 536.150. The Court could have taken the Commission at its word, and held that such a letter means what it says: that the Commission was unable to come to definitive conclusions concerning any issue raised in the charge. This would leave timeliness issues – like the merits of the employee's underlying discrimination claims – for resolution at another time, in another forum.[8]

---

[8] Another alternative would be to hold that an employee's failure to comply with the 180-day period for filing an administrative charge does not create a defense available to an employer at all, and that an employer therefore has no standing to challenge the timeliness of an administrative charge of discrimination. Instead, the Court could have held that employers are protected from defending "stale" claims solely by the two separate time

11

This is not what *Farrow* did, however. Instead, it plainly stated that the issuance of a right to sue letter "implicitly find[s]" that an administrative charge "was timely," even where the letter states that the Commission did not completely investigate the charge. 407 S.W.3d at 589. *Farrow* then went on to hold that this "implicit[ ] find[ing]" of timeliness is subject to judicial review pursuant to §§ 213.085.2 and 536.150. Even though a different result might be preferable, we are bound to follow the Supreme Court's holding in *Farrow*. *See* Mo. Const. art. V, § 2 (providing that the Supreme Court's "decisions shall be controlling in all other courts").

## Conclusion

For the foregoing reasons, I respectfully dissent. I believe Tivol had a *right* to appeal the circuit court's dismissal of its mandamus petition, because the circuit court addressed Tivol's petition on its merits. We should be deciding the merits of this appeal, not dismissing it. On the merits question, I agree with Judge Newton that, under the Supreme Court's decision in *Farrow*, Tivol is entitled to judicial review of the right to sue letter under § 536.150, RSMo, and to a judicial determination as to whether Norton's administrative complaint was untimely in whole or in part.

_____
Alok Ahuja, Chief Judge

---

limits contained in § 213.111.1: that a discrimination lawsuit "shall be filed [1] within ninety days from the date of the commission's notification letter to the individual but [2] no later than two years after the alleged cause occurred or its reasonable discovery . . . ." But *Farrow* did not follow this approach. Instead, by acknowledging that an employer could challenge the timeliness of an administrative charge in a judicial review proceeding, the Court recognized that employers have an interest in this timeliness question, and are aggrieved when a right to sue letter is issued based on an untimely charge.

12



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. TIVOL PLAZA, INC., | ) ) | |
| Appellant, | ) | WD78477 |
| | ) | |
| v. | ) | FILED: APRIL 12, 2016 |
| | ) | |
| MISSOURI COMMISSION ON HUMAN RIGHTS, et al., | ) ) | |
| Respondents. | ) | |

## DISSENTING OPINION

Because I believe that this Court has the authority to exercise jurisdiction over Tivol's appeal, I respectfully dissent and would reach the merits to provide guidance to litigants who may have been misdirected by dicta in *Farrow v. Saint Francis Medical Center*, 407 S.W.3d 579, 590 (Mo. banc 2013), suggesting that a writ of mandamus must be sought to review whether the Commission had jurisdiction to entertain a complaint of discrimination after the Commission issues a right-to-sue letter.

### I.  Discretionary Review under *Boresi*

I disagree with the majority's conclusion that the parties' failure to follow Rule 94 divests this Court of the ability to consider this matter on the merits.  I believe that this case fits comfortably within the narrow parameters guiding our exercise of discretionary review established under *U.S. Department of Veterans Affairs v. Boresi*,

396 S.W.3d 356, 359 n.1 (Mo. banc 2013), *Powell v. Department of Corrections*, 463 S.W.3d 838, 842 (Mo. App. W.D. 2015), and *In re Matter of R.M.A.*, 477 S.W.3d 185, 189 (Mo. App. W.D. 2015). In this regard, I would highlight the Commission's assertion during *en banc* argument that *Farrow* has now generated some ninety writs of mandamus filed against the Commission by parties in discrimination lawsuits seeking to make sense of, and protect their rights, under *Farrow*. These actions have added to the Commission's workload of considering, on average, 1,800 new complaints filed before it annually. I would suggest that we do the parties a disservice by not considering the case on the merits and giving them urgently needed procedural guidance, in light of the confusion apparently engendered by the *Farrow* opinion regarding the remedy available to employers seeking judicial review of the timeliness of a charge filed before the Commission after a right-to-sue notice issues under subsection 213.111.1. *Farrow*, 407 S.W.3d at 590.

II.    *Farrow* and Section 536.150 Review

*Farrow* determined that, in an employment-discrimination lawsuit, an employer has no right to assert an affirmative defense that an employee's discrimination complaint was not timely filed before the Commission. *Id.* at 591. *Farrow* held that the Commission's issuance of a right-to-sue notice is an implicit finding that the claim was timely filed before it, because the Commission would otherwise lack jurisdiction to issue the notice. *Id.* at 589. Finally, *Farrow* held that judicial review of administrative agency decisions, including Commission decisions, is controlled by section 536.150. *Id.* at 589-90.

2

These were the essential holdings in *Farrow*. Unnecessary to these holdings, and thus unnecessary to resolution of the issue before the Missouri Supreme Court, was *Farrow's* discussion of how judicial review of Commission jurisdiction should be pursued after a right-to-sue letter issues. Plainly, *Farrow* cannot be read to modify section 536.150 or to expand or modify the Commission's statutory authority. Despite these seemingly obvious points, discrimination litigants have been misdirected by *Farrow's obiter dictum* discussion of cases addressing when a writ of mandamus can be secured to require the Commission to follow the law, and have improperly concluded that a writ of mandamus must be sought to require the Commission to determine the timeliness of an employee's administrative complaint after a right-to-sue notice has issued. This misdirection is the unfortunate result of *Farrow's* citation to *State ex rel. Martin-Erb v. Missouri Commission on Human Rights*, 77 S.W.3d 600, 608 (Mo. banc 2002), and *Public School Retirement System of the School District of Kansas City v. Missouri Commission on Human Rights*, 188 S.W.3d 35, 41 (Mo. App. W.D. 2006), as well as the *obiter dictum* suggestion that these cases authorize mandamus under section 536.150 "where the Commission's executive director's issuance of a right to sue letter was in violation of the Commission's prescribed procedures and applicable law." *Farrow*, 407 S.W.3d at 590. As we explain, *Martin-Erb* and *Public School Retirement System* involved procedural circumstances that are legally and materially distinct from this case with attendant consequences on the statutory relief available under section 536.150. Once explained, it is clear that although a writ of mandamus will lie to require the Commission to follow its procedures and applicable law, a writ of mandamus will not

3

lie where, as here, the Commission has issued a right-to-sue notice in accordance with its procedures and applicable law. Once explained, it will also be clear that, after the Commission issues a right-to-sue letter, the Commission is divested of all further authority, and the timeliness of an employee's administrative complaint can only be determined under section 536.150 via judicial review of non-contested final administrative agency action.

A review of the Missouri Human Rights Act and its implementing regulations will demonstrate why I believe that *Martin-Erb* and *Public School Retirement System* are limited to the context in which they arose—a context that was not present in *Farrow*. Under Chapter 213 of the Missouri Revised Statutes, a complainant may bring a complaint alleging an unlawful discriminatory employment practice within one-hundred-eighty days of the alleged act of discrimination. § 213.075.1. The Commission's executive director and staff are then required to promptly investigate the complaint. § 213.075.3. The Commission may close the complaint for, among other matters, lack of jurisdiction or probable cause before the expiration of the subsequent 180-day administrative-processing period under subsection 213.211.1, 8 C.S.R. 60-2.025(7)(B)(3) & (4). In fact, if the Commission determines that it does not have jurisdiction to entertain a complaint, it must dismiss the complaint. Yet, subsection 213.111.1 expressly contemplates that the Commission's investigation (which necessarily would include its investigation into its own jurisdiction to proceed) may not be complete in one-hundred-eighty days. If one-hundred-eighty days have expired and the Commission's investigation is not complete, and *if* the complainant has requested the issuance of a right-to-sue notice, the Commission has

4

no discretion, and the right-to-sue notice must be issued.  § 213.111.1.  At that point, the Commission has no further authority to take any action whatsoever with respect to the employee's administrative discrimination complaint.  *Pub. Sch. Ret. Sys.*, 188 S.W.3d at 44.  On the other hand, if one-hundred-eighty days has expired and the employee makes no request for a right-to-sue notice, the Commission *must* continue and complete its investigation of the complaint—an investigation that will necessarily include completion of the Commission's investigation into its jurisdiction to entertain the complaint.  *Martin-Erb*, 77 S.W.3d at 604.

This understanding of the Commission's authority and direction to act, and the concurrent limits on that authority if an employee requests a right-to-sue notice after one-hundred-eighty days, is essential to appreciating *Martin-Erb's* limited reach.

In *Martin-Erb*, the complainant *did not* seek a right-to-sue notice at the expiration of the 180-day administrative-processing period, apparently preferring to pursue administrative remedies rather than a civil action against the employer, so the Commission continued its investigation for three years before issuing a "no probable cause" determination.  *Martin-Erb*, 77 S.W.3d at 602.  The complainant thereafter filed a petition for review and mandamus against the Commission and sought a hearing on the merits of her claim against her employer.  *Id.* at 604.  While the trial court properly dismissed her request for a review of the merits of her discrimination claim, our supreme court ruled that, under these circumstances, the executive director's "no probable cause" determination was reviewable as a non-contested case under section 536.150 "for the limited purpose of determining whether she arbitrarily exercised or refused to exercise her statutory and regulatory duties in making that

5

determination." *Id.* Because the precise issue subject to permissible non-judicial review was whether the Commission had followed mandatory procedures prescribed by its duly enacted rules and/or by statute, the Missouri Supreme Court also concluded that a writ of mandamus could be issued by the trial court to force the Commission to do what its rules and the law required. *Id*. at 607. Our supreme court was careful to distinguish between the executive director's discretion to reach a particular result, which cannot be compelled by writ of mandamus, and the requirement that she follow regulatory procedures in making that determination, which the court can compel by writ of mandamus. *Id.*

In this case, the Commission has not been accused of failing to follow a specific rule or statute. Although the Commission is directed by its rules to dismiss a complaint as to which it has no jurisdiction, the Commission is not directed when it must do so. Rather, it is given, effectively, and with but one exception, an unlimited amount of time to complete its investigation into an employee's complaint—an investigation that of necessity will require the Commission to determine whether the complaint was timely filed. The exception to this general expression of the Commission's authority is expressed in section 213.111, which anticipates that the Commission's investigation may not be complete within one-hundred-eighty days and which affords an employee the unfettered and absolute right to end the Commission's authority to complete its investigation by requesting a right-to-sue notice. Thus, it follows as a matter of law that a writ of mandamus is not available to compel the Commission to do anything after a right-to-sue notice is issued, as after that point, the Legislature has directed that the Commission has no further authority. *See State*

6

*ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 598 (Mo. banc 2012) (stating that an administrative agency created by the General Assembly is a creature of statute, and, as such, its "authority is limited to that given it by the legislature").

*Martin-Erb* does instruct, however, that a petition for review under subsection 536.150.1 may be pursued by an aggrieved party if the Commission's issuance of a right-to-sue notice (and the assumption implicit therein that the Commission had the jurisdiction to do so) "is not subject to administrative review" and "there is no other provision for judicial inquiry into or review of such decision." *Martin-Erb*, 77 S.W.3d at 605-06 (quoting subsection 536.150.1). Plainly, an employer is aggrieved by a right-to-sue notice if the employer believes that the Commission had no jurisdiction to entertain an employee's discrimination complaint because the complaint was not timely filed with the Commission. Plainly, an employer has no further administrative recourse to review the issue of jurisdiction because, once the Commission issues the right-to-sue notice, it has no further statutory authority to investigate the employee's complaint. And plainly, there is no other provision for judicial inquiry into the timeliness of the employee's administrative complaint, as *Farrow* made clear that such a claim cannot be raised as an affirmative defense in a discrimination lawsuit.

*Farrow's* reliance on *Martin-Erb* must be necessarily limited therefore to the obvious—that an employer has a right to seek subsection 536.150.1 judicial review of the timeliness of an employee's administrative complaint as a non-contested and final administrative agency determination after the Commission's issuance of a right-to-sue notice. That review under section 536.150 does not (and cannot) require an

7

employer to seek a writ of mandamus compelling the Commission to decide its jurisdiction—as the Commission has no authority to do anything with respect to a discrimination complaint once a right-to-sue notice is issued. Instead, the section 536.150 review is of the ordinary guild, wherein the trial court will determine, *de novo*, the timeliness of the employee's administrative complaint. *See City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009) (reviewing a non-contested decision, the circuit court "conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion"). Even though a right-to-sue notice is issued because the Commission's investigation is not complete, the right-to-sue letter nonetheless constitutes agency action that presumes the agency believed it had jurisdiction. *Farrow,* in fact, held that the issuance of a right-to-sue notice represents an implicit finding of Commission jurisdiction and a timely filed charge. 407 S.W.3d at 589. It is thus immaterial, particularly as judicial review will be *de novo*, that the Commission has not, in fact, technically completed its investigation into its own jurisdiction when it issues a right-to-sue notice.

*Farrow's* reference to *Public School Retirement System* must similarly be placed in context. In *Public School Retirement System*, the complainant sought a right-to-sue notice at the expiration of the 180-day administrative-processing period, and the Commission issued that notice. *Pub. Sch. Ret. Sys.*, 188 S.W.3d at 38. She subsequently filed a discrimination suit in court against her employers. *Id.* at 39. One of the employers filed a petition for writ of mandamus under subsection

8

536.150.1 seeking to compel the Commission to vacate its right-to-sue notice and to comply with a regulation that required the issuance of a notice of the complaint to the employer. *Id.* at 39, 41. This Court affirmed the trial court's grant of summary judgment in favor of the Commission. *Id.* at 38. We agreed with the Commission that its failure to notify the employer of the complaint, and thus to afford it the opportunity to respond, was not prejudicial where a right-to-sue notice issues as required at the expiration of the 180-day administrative-processing period on the complainant's written request. *Id*. at 45. The opinion emphasized that "[o]nce a right-to-sue letter has issued, all proceedings before the [Commission] concerning a complaint are terminated." *Id.* at 44. Although we opined that a writ in mandamus under subsection 536.150.1 would be *available* to the employer "for ***judicial review*** of the [Commission's] decision, issuing the right-to-sue letter without notice to the [employer] of [the employee's] complaint," *id.* at 41 (emphasis added), the precedential value of that comment is suspect, as we noted the obvious—that an employer would never have been able to show prejudice from a purported failure to notify when a right-to-sue letter is issued before an investigation is complete. *Id.* at 45.

Once again, *Farrow's* reference to *Public School Retirement System* must be read in the proper context. *Public School Retirement System* involved the Commission's plain and unambiguous obligation to notify an employer of a pending complaint involving the employer. Although *Public School Retirement System* loosely suggested that a writ of mandamus could be sought to compel the Commission to follow this rule, even after the issuance of a right-to-sue notice, that

9

suggestion was not a holding in the case. Moreover, that suggestion is highly suspect given the concurrent holding that the Commission loses all authority to act with respect to an employee's complaint after a right-to-sue notice is issued. I thus believe the reference to a right to seek a writ of mandamus in *Public School Retirement System* should be necessarily limited to recognition of the fact that before a right-to-sue notice issues, the Commission could be compelled to notify an employer of a pending complaint.

Regardless, it is clear that unlike the situation in *Public School Retirement System*, in *Farrow*, as in this case, no rule or statute required the Commission to complete its investigation (including an investigation into its own jurisdiction) before one-hundred-eighty days has passed. At best, therefore, *Farrow's* reliance on *Public School Retirement System* must be limited to the relevant holding that an aggrieved party cannot seek the withdrawal of a right-to-sue notice issued under section 213.111, because the Legislature directs that the Commission has no further authority to act once a right-to-sue notice is issued. Not only is issuance of the notice mandatory at the expiration of one-hundred-eighty days on written request of the complainant ("the commission ***shall*** issue . . . a letter indicating . . . [a] right to bring a civil action within ninety days of such notice against the respondent named in the complaint"), but also "[u]pon issuance of this notice, the commission shall terminate all proceedings relating to the complaint. No person may file or reinstate a complaint with the commission after the issuance of a notice under this section relating to the same practice or act." § 213.111.1.

10

In fact, consistent with subsection 213.111.1, *Farrow* held that the "issuance of the right to sue letter terminated all proceedings before the Commission related to Farrow's complaint." 407 S.W.3d at 590. In light of this express holding, and given that *Farrow's* procedural posture differed in important legal respects from *Martin-Erb* and *Public School Retirement System*, it is essential to the integrity of *Farrow*, and to its recognition of legislative control over the scope and extent of the Commission's authority and over judicial review of the Commission's determinations, that *Farrow* not be read to suggest or require an employer to seek a writ of mandamus to force the Commission to determine the timeliness of an employee's administrative complaint once a right-to-sue notice has issued.[1] Rather, the employer can seek review of that issue through *de novo* judicial review of a non-contested administrative agency decision under subsection 536.150.1.

While Tivol sought a court order requiring that the Commission make findings as to whether all of Ms. Norton's claims were timely filed, as explained above, the appropriate procedure under *Farrow* contemplates *de novo* review and fact-finding by the trial court under subsection 536.150.1 to determine whether the Commission's action was lawful—i.e., within its jurisdiction, given the contested timeliness of the

---

[1] *Farrow* was neither an appeal from the Commission's issuance of a right-to-sue notice nor did it technically involve a notice issued under section 213.111. While our supreme court did not distinguish between those notices issued before or after the expiration of the 180-day administrative-processing period, *Farrow* in fact involved a notice issued within the statutory processing period. *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 588 (Mo. banc 2013). I leave for another day how that distinction could, in my view, factor into an analysis of Commission discretion and whether a right-to-sue notice represents an implicit finding of Commission jurisdiction.

11

employee's administrative complaint.[2]  When a circuit court reviews a non-contested agency decision, it "hears evidence, determines facts, and adjudges the validity of the agency decision," conducting "such hearing as an original action." *Johnston v. Livingston Cnty. Comm'n*, 462 S.W.3d 859, 864 (Mo. App. W.D. 2015).

The key here is that Tivol has the right to a determination of whether the Commission issued a lawful right-to-sue notice before the company is required to defend itself in the succeeding discrimination lawsuit which cannot be filed in the absence of a lawful right-to-sue notice.  § 213.111.1; *Farrow*, 407 S.W.3d at 591; *see also Pub. Sch. Ret. Sys.*, 188 S.W.3d at 44.  It is therefore for **the court** to determine *de novo*, during a subsection 536.150.1 proceeding, whether the charge was timely filed before the Commission under subsection 213.075.1, and thus whether the notice properly issued, particularly where, as here, the Commission, in issuing the right-to-sue notice after the expiration of the 180-day administrative-processing period, had no duty other than to issue it.[3]  While we could affirm the lower court's dismissal and allow Tivol to refile its request for judicial review under section 536.150, because no specific time limitation applies to an application for relief under this section, I would suggest that, as in *Martin-Erb*, as we clarify the procedures available to litigants

---

[2] The substance of Tivol's section 536.150 filing, asserting the lack of a factual record pertaining to the charge's timeliness, persuades me that the appropriate relief could only be afforded following an evidentiary proceeding before the court under a procedure not constrained by the request for mandamus relief.  Still, I understand why Tivol and other employers are filing writs under *Farrow*, because the court repeatedly refers to this particular section 536.150 procedure as the means to mount a jurisdictional challenge.  *Farrow*, 407 S.W.3d at 590.

[3] Clearly, under *Farrow*, the timeliness of the charge's filing before the Commission is irrelevant during the succeeding civil action between the employee and employer.  *Farrow*, 407 S.W.3d at 591. Thus, if an employer may not challenge the charge's timeliness and secure Commission or judicial fact-finding on the matter before the civil action is filed, the lawfulness of a Commission right-to-sue notice in the context of the timeliness of the charge's filing will always evade review.

12

seeking to challenge the timeliness of a charge's filing before the Commission, we instead extend to Tivol the opportunity to amend its request for relief. *Martin-Erb*, 77 S.W.3d at 608. There is no doubt that were we to affirm, Tivol could immediately refile its subsection 536.150.1 judicial review petition to seek a *de novo* determination of the Commission's jurisdiction to entertain the employee's complaint based on the issue of its timeliness. "No statute sets forth any time limitation on the filing of a petition under section 536.150 by which review may be had in a noncontested case." *Id.* at 609. Rather, the 536.150 petition must "be filed within a reasonable time." *Id.* Under the circumstances, we would be hard pressed to characterize a refiled petition for judicial review as not timely filed. It thus makes sense to dispatch with form over substance by reversing the trial court's dismissal of the petition for writ of mandamus and remanding the case with instructions permitting the petition to be amended.

I would therefore exercise jurisdiction in the case and remand it with instructions for the circuit court to allow Tivol to amend its writ pleading to seek *de novo* review and an evidentiary hearing before the court under subsection 536.150.1. This procedure will best implement the holding in *Farrow* and, of necessity, will require the employee's participation in establishing the timeliness of her charge without unduly burdening the Commission.[4] The merits issue raised by this appeal—concerning whether a writ of mandamus is the appropriate proceeding by which to litigate the timeliness of an administrative charge after the right-to-sue letter has

---

[4] A summons issued in this matter to Ms. Norton, giving her notice of Tivol's section 536.150 pleading and requesting that she file a pleading in response.

13

issued—raises a matter of general importance and concern. I would hope that the possible confusion in the legal community over *Farrow* as to the path available for a section 536.150 timeliness review under these circumstances will be considered of sufficient urgency to warrant Missouri Supreme Court review.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge